# In the
# United States Court of Appeals
## For the Seventh Circuit

No. 08-2076

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

THERESA ALLDREDGE,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07-CR-141-S—**Barbara B. Crabb**, *Chief Judge*.

ARGUED DECEMBER 8, 2008—DECIDED DECEMBER 29, 2008

Before EASTERBROOK, *Chief Judge*, and BAUER and SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Theresa Alldredge pleaded guilty to distributing counterfeit currency, in violation of 18 U.S.C. §472, and has been sentenced to 15 months' imprisonment. She contends that the sentence is too high because, when applying the Sentencing Guidelines, the district court added two levels after finding that part of the offense was committed outside the United States. U.S.S.G. §2B5.1(b)(5).

Alldredge received the phony bills in the mail and passed them knowing that they were not genuine, intend-

ing to deceive the people who gave her goods and services. None of her conduct was "committed outside the United States", as §2B5.1(b)(5) requires for an enhancement. But we know from U.S.S.G. §1B1.3(a) that the application of specific offense characteristics depends not only on the elements of the offense but also on relevant conduct—which includes "all reasonably foreseeable acts and omissions of others in furtherance of . . . jointly undertaken criminal activity[] that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense". U.S.S.G. §1B1.3(a)(1)(B). The fake currency was mailed to Wisconsin from Canada, at the behest of a citizen of Nigeria. The district court concluded that this makes §2B5.1(b)(5) applicable.

In response to a mass email originating in Nigeria, Alldredge agreed to forge some checks. She sent approximately 40 to Michael Agbolade in Nigeria; he promised to pay $100 apiece. But the "payment," when it arrived, was counterfeit (and only $3,000 rather than the promised $4,000). Agbolade had declared to Alldredge his willingness to cheat and deceive, and apparently he did not see any reason to keep his promise to her either, for she was not in a position to file suit or enforce the promise in any other way, or even to withhold repeat business. Alldredge recognized that the bills were not genuine but decided to spend them anyway. After some initial successes, she was caught when she tried to pay $1,100 in property taxes and traffic fines with the ersatz money.

The scheme in which Alldredge participated was international in scope. Had she been charged with forging checks for Agbolade, the international aspect of the crime would have been relevant conduct under §1B1.3. But she was not charged with forgery or any other offense related to the checks. The "offense of conviction" is passing counterfeit currency.

Section 1B1.3 reflects the fact that the Sentencing Guidelines implement a charge-offense system rather than a real-offense system. See, e.g., *United States v. White*, 888 F.2d 490 (7th Cir. 1989); *United States v. Talbott*, 78 F.3d 1183 (7th Cir. 1996). See also Stephen Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L. Rev. 1, 8–12, 25–28 (1988). Adjustments such as §2B5.1(b)(5) introduce some real-offense ingredients into the system, but only when these ingredients are foreseeable parts of a scheme or plan that includes the offense of conviction. Alldredge schemed with Agbolade to utter forged checks, but she did not agree with him to engage in international counterfeiting. To the contrary, she was a victim rather than a beneficiary of Agbolade's counterfeiting, which she did not anticipate.

*White*, one of this court's first encounters with the Sentencing Guidelines, stressed the importance of the limits on the scope of relevant conduct. 888 F.2d at 496–98, 500–01. These limits remain important after *United States v. Booker*, 543 U.S. 220 (2005). A judge must correctly understand what the Guidelines recommend. See *Gall v. United States*, 128 S. Ct. 586, 596 (2007) ("a district court should begin all sentencing proceedings by correctly

calculating the applicable Guidelines range"). The district court did not find that Alldredge's "offense of conviction" had an international feature or that Alldredge agreed with Agbolade to accept counterfeit rather than real money for her work as a check forger. She is entitled to be sentenced without the two levels assessed under §2B5.1(b)(5).

After getting the Guidelines right, the district judge possesses discretion to take the international aspects of Alldredge's conduct (including her work forging checks for a Nigerian employer) into account as appropriate under 18 U.S.C. §3553(a). The choice between a charge-offense approach and a real-offense approach was made by the Sentencing Commission rather than Congress; §3553(a) is agnostic on this question. *Kimbrough v. United States*, 128 S. Ct. 558 (2007), holds that a district judge may disagree with the Sentencing Commission (after first being sure to understand what the Commission has recommended), as long as the court observes all applicable statutes. Perhaps the process of reconsideration on remand will lead to the same sentence; whether it does is a question for the district judge rather than the court of appeals.

REVERSED AND REMANDED

12-29-08